No. 23-1078

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

B.P.J., by her next friend and mother, HEATHER JACKSON,

*Plaintiff-Appellant*,

V.

WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY
BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL
ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as
State Superintendent, DORA STUTLER in her official capacity as Harrison
County Superintendent, and THE STATE OF WEST VIRGINIA,

*Defendants-Appellees*,

AND

LAINEY ARMISTEAD,

*Intervenor-Appellee*.

On Appeal from the United States District Court
for the Southern District of West Virginia
Hon. Joseph R. Goodwin
Case No. 2:21-cv-00316

**APPELLANT B.P.J.'s MOTION FOR STAY PENDING APPEAL**

**RELIEF REQUESTED BY FEBRUARY 26, 2023**

*Counsel for Plaintiff-Appellant listed on the following page*

Tara Borelli
LAMBDA LEGAL
158 West Ponce De Leon Ave.,
Ste. 105
Decatur, GA 30030
Phone: (404) 897-1880
tborelli@lambdalegal.org

Sruti Swaminathan
LAMBDA LEGAL
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
sswaminathan@lambdalegal.org

Kathleen Hartnett
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com

Joshua Block
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org

*Counsel for Plaintiff-Appellant B.P.J.*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................4

LEGAL STANDARD...........................................................................13

I.    B.P.J. Is Likely To Succeed On The Merits Of Her Appeal And, At A
      Minimum, Presents A Substantial Merits Case...........................................15

      A.    B.P.J. Is Likely To Succeed On Her Equal Protection Claim............15

      B.    B.P.J. Is Likely To Succeed On Her Title IX Claim.........................18

II.   The Equities Overwhelmingly Favor A Stay Pending Appeal. ...................20

CONCLUSION ....................................................................................22

### TABLE OF AUTHORITIES

**Cases**

*A.M. by E.M. v. Indianapolis Pub. Sch.*,
  2022 WL 2951430 (S.D. Ind. July 26, 2022) .......................................2

*Foster v. Gilliam*,
  515 U.S. 1301 (1995)..........................................................................14

*Grimm v. Gloucester Cnty. Sch. Bd.*,
  972 F.3d 586 (4th Cir. 2020) .......................................................*passim*

*H.B. Rowe Co. v. Tippett*,
  615 F.3d 233 (4th Cir. 2010) ...............................................................16

*Hecox v. Little*,
  479 F. Supp. 3d 930 (D. Idaho 2020) .............................................2, 16

*Hilton v. Braunskill*,
  481 U.S. 770 (1987)........................................................................14, 15

*Lehr v. Robertson*,
  463 U.S. 248 (1983)..............................................................................18

*Nken v. Holder*,
  556 U.S. 418 (2009)................................................................12, 13, 14

*Nken v. Holder*,
  585 F.3d 818 (4th Cir. 2009) ...............................................................14

*United States v. Virginia*,
  518 U.S. 515 (1996)..............................................................................16

**Other Authorities**

Federal Rule of Appellate Procedure 8(a)(2)............................................1

Local Rule 8 ...............................................................................................1

**INTRODUCTION**

Pursuant to Federal Rule of Appellate Procedure 8(a)(2) and Local Rule 8, Plaintiff-Appellant B.P.J., a 12-year-old girl who is transgender, respectfully moves for a stay pending appeal of the District Court's January 5, 2023 order (A-262) that dissolved the District Court's preliminary injunction (A-052) enjoining enforcement of H.B. 3293 against B.P.J.

In April 2021, West Virginia enacted H.B. 3293 to categorically ban transgender girls like B.P.J. from participating on girls' school sports teams in West Virginia. B.P.J. filed an as-applied challenge to H.B. 3293. In July 2021, the District Court issued its preliminary injunction, which allowed B.P.J. to participate on her middle school's girls' cross-county and track-and-field team for the past three seasons without incident. Tryouts for spring track-and-field are on February 27, 2023. This stay motion seeks to preserve the status quo and prevent irreparable harm to B.P.J. by allowing her to continue to participate on girls' teams pending appeal.

The District Court's well-reasoned preliminary injunction order recognized B.P.J.'s likely success in challenging H.B. 3293's legality, including under this Court's ruling in *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), *cert. denied*, *Gloucester Cnty. Sch. Bd. v. Grimm*, 141 S. Ct. 2878 (2021); her irreparable harm from being excluded from girls' sports; and the public interest in vindicating her civil rights (A-052). The court thus allowed B.P.J. to try out for and

participate on girls' sports teams at her middle school (*id.*).[1]  In granting the preliminary injunction, the District Court correctly concluded that "Plaintiff is not most similarly situated with cisgender boys; she is similarly situated to other girls" (A-295); that H.B. 3293 "as applied to B.P.J. is not substantially related to providing equal athletic opportunities for girls" (A-060); and that "permitting B.P.J. to participate on the girls' teams would not take away athletic opportunities from other girls," (A-062).  Since the July 2021 injunction, B.P.J. has participated without incident on the girls' cross-country and track teams for three seasons (A-309 ¶¶ 8, 10).  Despite regularly finishing near the back of the pack, she has reaped the benefits of school sports:  her mother has "never seen [B.P.J.] happier" (*id.*), and B.P.J. has considered the past two years "the best of [her] life" (A-304 ¶ 6).

On January 5, 2023, without ever having held a hearing in the case, resolving any of the pending *Daubert* motions, and largely without reference to the voluminous record, the District Court granted summary judgment against B.P.J and dissolved the preliminary injunction (A-262).  The District Court's summary judgment order is deeply flawed, including because it is directly contrary to this

---

[1] Two other categorical bans on transgender girls and women participating in female sports were held to be likely unlawful.  *See Hecox v. Little*, 479 F. Supp. 3d 930, 975 (D. Idaho 2020) (Equal Protection Clause), *appeal filed*, 20-35815 (9th Cir. Sept. 17, 2020); *A.M. by E.M. v. Indianapolis Pub. Sch.*, No. 1:22- cv-01075-JMS-DLP, 2022 WL 2951430 (S.D. Ind. July 26, 2022) (Title IX), *appeal dismissed*, No. 22-2332 (7th Cir. Jan. 19, 2023).

Court's binding decision in *Grimm*.

On January 20, 2023, B.P.J. filed a motion for stay pending appeal with the District Court. On February 7, 2023, the District Court denied B.P.J.'s motion, explaining that although "the second, third, and fourth [equitable] factors weigh heavily in favor of granting B.P.J.'s motion for a stay," (A-338), the District Court "[could] not find that B.P.J. is likely to succeed on her as-applied challenge of [H.B. 3293] on appeal" (A-341). In so ruling, the District Court applied the wrong legal standard. *See infra* at 14. The District Court also underscored that "not one child has been or is likely to be harmed by B.P.J.'s continued participation and that "the only person truly injured by the enforcement of [H.B. 3293] is B.P.J., who must now watch her teams compete from the sidelines" (A-338).

Given the flawed—and at a minimum, debatable—nature of the District Court's summary judgment ruling (which is irreconcilable with *Grimm*), coupled with the District Court's correct recognition that all three equitable factors strongly favor a stay, a stay pending appeal should be granted. Absent a stay, B.P.J. will be the ***only*** middle school student in West Virginia without "a genuine opportunity" "to participate in athletics" alongside her classmates (A-338).

B.P.J. respectfully seeks relief by February 26, 2023, because tryouts for the spring 2023 track-and-field team take place on February 27, 2023. Defendants and Intervenor oppose the requested relief.

## BACKGROUND

**A.      B.P.J.**

B.P.J. is a 12-year-old girl who lives in Harrison County, West Virginia, attends Bridgeport Middle School, and, among other things, loves to run and participate in team sports.[2]  This is B.P.J. and her mother (and next friend), Heather Jackson:



B.P.J. is transgender.  Despite being assigned the sex of male at birth, she has known since a very young age that she is a girl.  For years, she has lived as a girl in all aspects of her life.   Between third and fourth grade, B.P.J. socially transitioned to living and presenting in accordance with her identity as a girl (A-103 ¶ 3; A-098 ¶ 6).   B.P.J.'s elementary school, middle school, and the State itself have all

---

[2] In its preliminary injunction order, the District Court relied upon "the meticulously researched and written opinion in *Grimm*," (A-053) for background information and terminology related to people who are transgender.  B.P.J. respectfully refers the Court to that discussion as well.

acknowledged that B.P.J. is a girl (A-104-05 ¶¶ 4-11; A-255).[3]

In 2019, B.P.J. was diagnosed with gender dysphoria (A-104 ¶ 12). On June 15, 2020, B.P.J. began receiving puberty delaying (or "blocking") treatment, in accordance with generally accepted clinical guidelines for treating gender dysphoria (*id.*; A-304 ¶ 4). In June 2022, B.P.J. was prescribed estradiol, an estrogen-based feminizing hormone therapy used to maintain testosterone levels in the typical female range for cisgender girls and women (A-308 ¶ 5; A-304 ¶ 4). B.P.J. is currently taking estradiol in conjunction with her puberty-delaying treatment. As a result, B.P.J. will not go through endogenous male puberty and will instead develop physiological characteristics consistent with a typical female puberty (A-105 ¶ 18).

B.P.J. has always liked running and playing on team sports (A-106-07 ¶¶ 19-21, 125-26; A-304 ¶¶ 5-6). While in elementary school, she enjoyed participating on a recreational cheerleading team with other girls (A-106 ¶ 20). As someone who comes from a family of runners, B.P.J. also grew up running and watching her older brothers and mother run competitively and as part of a team (*id.*). School-sponsored athletics offer a range of benefits for children and young adults, including creating camaraderie and teaching teamwork, which are advanced when all athletes have the opportunity to play the sport they love (A-106-07 ¶¶ 22-27).

---

[3] All redactions in exhibits submitted along with this motion protect non-relevant and confidential information from being made public. B.P.J. will provide unredacted versions to the Court upon request with a request to seal those versions.

In May 2021, B.P.J. was told by her middle school principal that she would not be able to run on the girls' cross-country team because of H.B. 3293 (A-120 ¶¶ 94-95). She was devastated by the prospect of not being able to play school sports; playing on the boys' team is not an option for her because she is not a boy (A-120-21 ¶¶ 98-100, 102).

**B.    H.B. 3293**

As the District Court recognized, H.B. 3293 was a "'solution' in search of a problem" (A-271). Indeed, "not one child has been or is likely to be harmed by B.P.J.'s continued participation on her middle school's cross country and track teams" and instead, "the only person truly injured by the enforcement of [H.B. 3293] is B.P.J., who must now watch her teams compete from the sidelines" (A-338).

Before it passed H.B. 3293, West Virginia already had a general policy establishing separate school sports teams for boys and girls (A-108-09 ¶¶ 31-39). It also did not have a law or policy prohibiting girls who are transgender from playing on girls' teams (*id.*). Rather, the relevant state body had an internal policy that allowed students who are transgender to participate on teams consistent with their gender identity, assuming certain conditions were met (A-109 ¶ 39). H.B. 3293 thus was not enacted to create sex separation in sports, but rather—as the District Court observed—was "aimed to politicize participation in school athletics for transgender students" (A-283).

6

H.B. 3293 categorically bans all girls who are transgender from participating in school sports from middle school through college. Specifically, H.B. 3293 requires that all public secondary school or college sports teams in West Virginia be "expressly designated" as either "males," "females," or "co-ed" based solely on a student's "biological sex." H.B. 3293 defines "[b]iological sex" as "an individual's physical form as a male or female based solely on the individual's reproductive biology and genetics at birth." This definition of "biological sex" excludes consideration of circulating testosterone—even though this factor explains most, if not all, of the difference in athletic performance between cisgender men and women—and thus classifies all transgender girls as boys, even if, as with B.P.J., the transgender girl takes medication ensuring that she will never experience an endogenous male puberty. H.B. 3293 further provides that "[a]thletic teams or sports designated for females, women, or girls shall not be open to students of the male sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport." There is no parallel provision for boys' teams.

In short, H.B. 3293 employs a definition of "biological sex" that categorically excludes B.P.J. and any other transgender girl from playing sports at the middle school, high school, and collegiate levels. The accompanying legislative debate confirmed this purpose.

### C.    This Litigation

B.P.J., a rising middle school student when H.B. 3293 was passed, filed an as-applied challenge to H.B. 3293 in May 2021, alleging that its blanket exclusion of transgender girls violated equal protection and Title IX (A-026).

### 1.    The Preliminary Injunction

In July 2021, the District Court preliminarily enjoined Defendants from enforcing H.B. 3293 against B.P.J. (A-052).   The District Court's preliminary injunction order cogently recognized the controlling legal framework, including this Court's "meticulously researched and written opinion in *Grimm*" (A-053).

Specifically, the District Court correctly concluded that "Plaintiff is not most similarly situated with cisgender boys; she is similarly situated to other girls" for purposes of equal protection and Title IX, (A-058); that H.B. 3293 "as applied to B.P.J. is not substantially related to providing equal athletic opportunities for girls," including because "permitting B.P.J. to participate on the girls' teams would not take away athletic opportunities from other girls," and thus likely violates equal protection, (A-060, A-062); and that "B.P.J. will be treated worse than girls with whom she is similarly situated because she alone cannot join the team corresponding to her gender identity," thus likely violating Title IX, (A-064).  The District Court also recognized that participating on boys' team was not an option for B.P.J.: "Forcing a girl to compete on the boys' team when there is a girls' team available

8

would cause her unnecessary distress and stigma," *id.*

Following the preliminary injunction, B.P.J. has participated—without incident, and with the support of her coaches and teammates—on the girls' cross country and track-and-field at her middle school for the past three sports seasons. She is currently preparing for spring track tryouts (A-309 ¶¶ 8, 10). Though B.P.J. consistently finishes near the back of the pack, she is a team player who loves to play sports, have fun with her friends, and try her best (*id.*).

Meanwhile, litigation continued in the District Court, with the parties engaging in several months of extensive discovery. Although B.P.J. is a middle-school student, much of this discovery was prompted by Intervenor Lainey Armistead, at the time a college student who claimed that H.B. 3293 protected her from potentially having to compete in soccer against hypothetical women who are transgender. But when Armistead was asked during her deposition whether she had had any objection to B.P.J. playing on her middle school cross-country teams, Armistead stated "I don't know" (A-125 ¶ 130).[4]

With respect to expert discovery, B.P.J.'s evidence and experts confirmed that H.B. 3293 did not advance any proffered state interests, particularly as applied to B.P.J., who has never experienced endogenous male puberty and has never had

---

[4] Armistead graduated in 2022 and no longer lives in West Virginia (A-241-45). In light of this, B.P.J. filed a motion for the District Court to revoke its grant of permissible intervention, which the District Court never resolved (A-233).

levels of circulating testosterone akin to those of cisgender males, (*see* A-105 ¶¶ 16-17).  In contrast, Defendants and Intervenor proffered unqualified and discredited experts who sought to call into question B.P.J.'s identity as a girl and her medical treatment, and who argued, incorrectly, that studies about cisgender male performance apply to transgender girls (A-129, A-160, A-186, A-214).

## 2.  Summary Judgment and The Dissolution Order

In May 2022, the parties filed cross-motions for summary judgment (A-067, A-072, A-079, A-086, A-089, A-092).  They also filed dozens of *Daubert* motions and motions *in limine*, none of which were resolved by the District Court (A-262). Instead, after twice postponing a trial date, and having never held a hearing in the case, the District Court issued a 23-page opinion resolving the case against B.P.J. on summary judgment and dissolving the preliminary injunction order (*id.*).

The District Court's summary judgment order marked a complete and unexplained about-face from the reasoning of the preliminary injunction order. Among other things, the District Court failed to apply the approach required by precedent—including *Grimm*—for an as-applied challenge under heightened scrutiny, instead reflecting the analysis of the *Grimm* dissent.  *Compare, e.g.*, (A-283 ("[T]ransgender girls are biologically male.  Short of any medical intervention that will differ for each individual person, biological males are not similarly situated to biological females for purposes of athletics.")), *with, e.g.*, *Grimm*, 972 F. 3d at

628 (Niemeyer, J., dissenting) ("Grimm was born a biological female and identifies as a male, and therefore his circumstances are different from the circumstances of students who were born as biological males."). The District Court also incorrectly concluded that H.B. 3293's "definition of 'girl' as being based on 'biological sex' is substantially related to the important government interest of providing equal athletic opportunities for females," (A-280-81), and that "transgender girls are not excluded from school sports entirely" because "[t]hey are permitted to try out for boys' teams," (A-283). The District Court reached these conclusions notwithstanding its observations that "West Virginia had no 'problem' with transgender students playing school sports and creating unfair competition or unsafe conditions," (A-270), and that "the statute is at best a solution to a potential, but not yet realized, 'problem,'" (*id.*).

### 3. B.P.J.'s Request for a Stay Pending Appeal

On January 20, 2023, B.P.J. moved the District Court for a stay pending appeal of its order dissolving the preliminary injunction, citing her upcoming February 27, 2023, tryouts and her desire to continue playing girls' sports pending appeal (A-285). B.P.J. also noticed an appeal to this Court of the District Court's January 5, 2023 Orders (A-312). Defendants and Intervenor opposed the stay but cited no harm to anyone in West Virginia or elsewhere from B.P.J.'s continued participation (A-314). Instead, Defendants and Intervenor resorted to quoting an

11

out-of-state college student as their *sole* support for the notion that "placing 16th instead of 15th" in a field of 25 participants constitutes cognizable harm (A-330).

The District Court denied B.P.J.'s motion for a stay pending appeal on February 7, 2023. Although the District Court correctly cited *Nken v. Holder*, 556 U.S. 418, 433–34 (2009), as providing the controlling legal standard for stays, it then incorrectly required B.P.J. to meet the four-factor test for preliminary injunctions, including by requiring B.P.J. to show a likelihood of success on the merits. (A-337). This dispositive error, *see, e.g.*, *Nken*, 556 U.S. at 434, led the District Court to conclude that although three of the four *Nken* factors "weigh heavily in favor of granting B.P.J.'s motion for a stay," (A-338), B.P.J.'s motion should be denied because the District Court believed B.P.J. was "not likely to succeed on her as-applied challenge," (A-341).

The District Court further erred in its stay order by: (1) assessing B.P.J.'s likelihood of success on a facial challenge despite that B.P.J.'s case involves only an as-applied challenge, (A-340); (2) refusing to consider "B.P.J.'s individual characteristics" on the misguided belief that doing so would require "applying strict scrutiny's narrow tailoring requirement" to a case "under intermediate scrutiny," (A-341); and, perhaps most notably, (3) again entirely ignoring this Court's decision in *Grimm*, instead adopting reasoning akin to that in the *Grimm* dissent, (*id.*).

B.P.J. hereby moves in this Court for a stay pending appeal of the District

12

Court's order dissolving the preliminary injunction.  B.P.J. respectfully seeks a ruling from this Court on her motion by February 26, 2023, because tryouts for track-and-field take place on February 27, 2023.  Absent a stay, B.P.J. will be required to "watch her teams compete from the sidelines" throughout this appeal (A-338).

## LEGAL STANDARD

A stay pending appeal should issue where a party "establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits" if the other "factors in the traditional stay analysis militate" in its favor.  *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987); *see also Foster v. Gilliam*, 515 U.S. 1301, 1303 (1995) (Rehnquist, C.J., in chambers) (staying release order based on substantial case on merits).  The Supreme Court reaffirmed the *Hilton* standard for stays in *Nken*, and this Court thereafter explained that the "the correct standard" for adjudicating a stay motion "is the 'traditional' four-factor test that *balances* the applicant's likelihood of success on the merits, the injury to the applicant if the stay is denied, the injury to the government if the stay is granted, and the public interest."  *Nken v. Holder*, 585 F.3d 818, 821 (4th Cir. 2009).

Although citing *Nken*, the District Court's stay order then erroneously applied the preliminary injunction standard, requiring B.P.J. to show a likelihood of success on the merits—not just a substantial merits case—to obtain a stay pending appeal

(A-341). This was error. To be clear, and as explained below, B.P.J. is likely to prevail on appeal, including under *Grimm*. But, as the Supreme Court has explained, and as this Court has recognized, although "[t]here is substantial overlap between" the stay factors, unlike an injunction, a stay "simply suspends judicial alteration of the status quo" pending appeal "by temporarily suspending the source of authority to act—the order or judgment in question." *Nken*, 556 U.S. at 428–34 (cleaned up). In this case, the status quo was the District Court's injunction that had been in place for a year-and-a-half, allowing B.P.J. to play school sports for three seasons; the District Court's dissolution order alters that status quo, and it is the dissolution order that B.P.J. seeks to stay pending appeal.

## ARGUMENT

This Court should maintain the status quo by granting a stay pending appeal of the District Court's order dissolving the preliminary injunction. B.P.J. is likely to succeed on the merits of her appeal, including under *Grimm*, and, at a minimum, "has made a substantial case on the merits," *Hilton*, 481 U.S. at 778. The District Court correctly found that the three remaining factors "weigh heavily in favor of granting" a stay: B.P.J. will be irreparably harmed if the dissolution order is not stayed pending appeal; no one will be harmed by a stay; and the public interest favors

14

a stay preserving the status quo (A-338).

**I.    B.P.J. Is Likely To Succeed On The Merits Of Her Appeal And, At A Minimum, Presents A Substantial Merits Case.**

The District Court's order granting B.P.J. a preliminary injunction faithfully applied precedent, including this Court's analysis in *Grimm* (A-053).  Inexplicably, the District Court's order granting summary judgment against B.P.J. did not.  B.P.J. is likely to succeed on the merits of her as-applied equal protection and Title IX claims, and, at a minimum, presents a substantial case on the merits warranting a stay.

**A.    B.P.J. Is Likely To Succeed On Her Equal Protection Claim.**

In its preliminary injunction order, the District Court correctly concluded that B.P.J. is likely to succeed on her as-applied equal protection claim.  The same remains true today, and, indeed, is a conclusion compelled by precedent.

Specifically, as the District Court recognized, H.B. 3293 "discriminates on the basis of transgender status," (A-058); *accord Hecox*, 479 F. Supp. 3d at 975, as well as on the basis of sex, given that B.P.J. "is similarly situated to other girls," including because she "has lived as a girl for years" (A-058).  Thus, heightened equal protection scrutiny applies, under which Defendants must prove an "exceedingly persuasive justification" to sustain H.B. 3293's discriminatory classification.  *United States v. Virginia ("VMI")*, 518 U.S. 515, 534 (1996); *see Grimm*, 972 F.3d at 607–10.  And, just as *Grimm* conducted an as-applied analysis as to whether the school's

15

restroom policy satisfied heightened scrutiny as applied to *Grimm* in particular, so did the District Court's preliminary injunction order, explaining that its "inquiry is constrained to whether this statute is unconstitutional as applied to B.P.J.," which must be determined "'based on a developed factual record and the application of a statute to a specific person'" (A-060 (citation omitted)).[5]  The District Court then correctly concluded that, including because "B.P.J. has not undergone and will not undergo endogenous puberty, the process that most young boys undergo that creates the physical advantages warned about by the State," (A-061), H.B. 3293, as applied to B.P.J., "is not substantially related to protecting girls' opportunities in athletics or their physical safety when participating in athletics," (A-062).

In contrast to this faithful as-applied analysis, the District Court's evaluation of B.P.J.'s equal protection claim at summary judgment flouted *Grimm* at every turn. Among other things, the District Court analyzed the classification at issue as a distinction between boys and girls in general, not as discrimination based on transgender status, (A-275, A-278); determined that B.P.J. is similarly situated to a hypothetical cisgender boy with low circulating testosterone rather than other girls on her team, (A-280); and failed to analyze B.P.J.'s as-applied claim by examining

---

[5] As this Court has made clear in the equal protection context, regardless of whether a plaintiff can "mount a successful facial challenge, [a plaintiff] may nonetheless be able to demonstrate that the application or enforcement of a statute is unconstitutional" if "a court has 'the concrete facts necessary' to assess such an as-applied challenge." *H.B. Rowe Co. v. Tippett*, 615 F.3d 233, 243 (4th Cir. 2010).

whether excluding B.P.J. in particular was substantially related to an important governmental interest in light of the fact that she has been receiving puberty-delaying medication and will not go through endogenous puberty because other girls who are transgender may not receive similar medical treatment, (A-279). In each of these respects, the District Court's summary judgment decision eschewed the reasoning employed by *Grimm*, *see Grimm*, 972 F.3d at 609–14, in favor of reasoning akin to that of the *Grimm* dissent,[6] *see Grimm*, 972 F.3d at 628 (Niemeyer, J., dissenting) ("Grimm was born a biological female and identifies as a male, and therefore his circumstances are different from the circumstances of students who were born as biological males. For purposes of restroom usage, he was not similarly situated to students who were born as biological males.").

The District Court also expressed the erroneous view that it was not permitted under intermediate scrutiny to consider the facts of B.P.J.'s individual circumstances (A-341). To the contrary, it was required to do so. *Grimm* explicitly focused on the policy's constitutionality as applied to Grimm's particular circumstances. *Grimm*, 972 F. 3d at 609–10; *cf. Lehr v. Robertson*, 463 U.S. 248, 267 (1983) (explaining that laws allowing unmarried mothers—but not unmarried fathers—from vetoing a child's adoption are constitutional as applied to fathers who never establish a

---

[6] This same error has recurred in the District Court's order denying B.P.J.'s motion for a stay pending appeal (A-336).

substantial relationship with the child, but unconstitutional as applied to fathers who have established that relationship).

In sum, under *Grimm*, heightened scrutiny applies to B.P.J.'s as-applied equal protection claim, and the relevant question is whether H.B. 3293 survives scrutiny as applied to B.P.J. *See Grimm*, 972 F.3d at 607 ("Because we hold that the Board's policy as applied to Grimm is not substantially related to the important objective of protecting student privacy, we affirm summary judgment to Grimm."). Because Defendants failed to provide any "exceedingly persuasive justification" for treating B.P.J. like a boy when she is a girl whose participation does nothing to threaten women's sports or compromise any of the state's post hoc claimed interests, she is likely to succeed on her equal protection claim.

### B. B.P.J. Is Likely To Succeed On Her Title IX Claim.

Likewise, when the District Court granted B.P.J.'s motion for a preliminary injunction, it faithfully applied *Grimm*'s Title IX holding in determining that B.P.J. is likely to succeed on her as-applied Title IX claim. As with her equal protection claim, the same conclusion is compelled by precedent today.

In assessing the Title IX claim at the preliminary injunction stage, the District Count first explained that "as in *Grimm*, I also have little difficulty finding that B.P.J. is harmed by this law," which "[l]ike the discriminatory policy in *Grimm*," "both stigmatizes and isolates B.P.J." (A-063). The District Court then concluded that this

18

harm constitutes unlawful "discrimination" under Title IX because "B.P.J. will be treated worse than girls with whom she is similarly situated" since "she alone cannot join the team corresponding to her gender identity" (A-064).

In contrast to this straightforward analysis compelled by *Grimm*, at summary judgment the District Court rejected B.P.J.'s Title IX claim without addressing *Grimm*. Instead, the District Court stated that "despite her repeated argument to the contrary, transgender girls are not excluded from school sports entirely. They are permitted to try out for boys' teams, regardless of how they express their gender" (A-283). This approach is just like the argument rejected by this Court in *Grimm*— that Gavin Grimm could have used the girls' restroom—because it "fails to 'meaningfully reckon with what it means for [B.P.J.] to be a transgender [girl].'" *Grimm*, 972 F.3d at 610 n.10. The District Court further erred by concluding that for Title IX purposes, B.P.J. is similarly situated to other people classified by H.B. 3293 as "biological males," (A-283), which, again, is contrary to *Grimm*'s holding that Grimm was similarly situated to students of the same gender identity. *Grimm*, 972 F.3d at 610.

In sum, under *Grimm*, H.B. 3293 discriminates on the basis of sex in violation of Title IX by excluding B.P.J. from girls' sports. Moreover, allowing students to participate in sports consistent with their gender identity does not, as the District Court erroneously assumed, undermine Title IX's regulations authorizing sex

19

separation in sport as a general matter. *See, e.g.*, (A-004 (U.S. Statement of Interest) ("Although the [Title IX] regulations allow recipients to operate or sponsor separate teams based on sex, the regulations do not define 'sex' or address how students who are transgender should be assigned to such teams.").)

## II. The Equities Overwhelmingly Favor A Stay Pending Appeal.

As the District Court correctly recognized, the non-merits factors all "weigh heavily in favor of granting" a stay pending appeal (A-338). B.P.J. will experience her middle school years only once and will be irreparably harmed if she is now excluded from participating on her school's girls' teams. Indeed, as the District Court recognized in its order granting B.P.J. a preliminary injunction, there is "little difficulty finding that B.P.J. is harmed by this law" because "[l]ike the discriminatory policy in *Grimm*, this law both stigmatizes and isolates B.P.J." (A-063). In fact, the District Court correctly found that "not one child has been or is likely to be harmed by B.P.J.'s continued participation on her middle school's cross country and track teams" while, at the same time, B.P.J. is "the only person truly injured be enforcement of [H.B. 3293]" (A-338). The District Court further recognized that "[f]orcing a girl to compete on the boys' team when there is a girls' team available would cause her unnecessary distress and stigma [and] would be confusing to coaches and teammates" (A-064). Declarations from both B.P.J. and her mother, submitted with B.P.J.'s stay motion below, confirm the irreparable harm

that will occur without a stay pending appeal (A-310 ¶¶ 11-12; A-305 ¶¶ 8-10).

In contrast, Defendants and Intervenor continue to identify absolutely no one in West Virginia who will suffer cognizable harm from allowing B.P.J. to participate on girls' teams (A-338 ("not one child has been or is likely to be harmed by B.P.J.'s continued participation on her middle school's cross country and track teams")). Lainey Armistead—the Intervenor who formerly played college soccer in West Virginia, who never competed or was reasonably likely to compete against B.P.J. or any other known transgender athlete, and who stated in her deposition that she was not sure whether she opposed B.P.J.'s participation in girls' sports—graduated in May 2022 and now is a law student in Florida. Thus, Defendants and Intervenor have resorted to referencing an isolated quote from an Idaho college student, (A-330), and rampant speculation about imagined inequities, such as a "biological male whose gender identity switches 'back and forth,'" (A-329). To be clear, as far as the record shows, B.P.J. is the only girl who is transgender seeking to participate in school athletics in West Virginia, and there is exactly zero basis to think that any of Defendants' hypotheticals will arise while this case is on appeal.

Finally, as the District Court initially recognized when faithfully applying *Grimm* and other precedents, the public interest strongly favors allowing B.P.J. to play as the girl she is: "It is clearly in the public interest to uphold B.P.J.'s constitutional right to not be treated any differently than her similarly situated peers

because any harm to B.P.J.'s personal rights is a harm to the share of American rights that we all hold collectively" (A-065).

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant B.P.J. respectfully requests that, on or before February 26, 2023, the Court issue a stay pending appeal of the District Court's order dissolving its preliminary injunction.


Dated:  February 7, 2023

By: *Kathleen Hartnett*

Attorneys for Plaintiff-Appellant B.P.J.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 27(d)(2)(A) and 32(g), I certify that this motion complies with applicable type-volume and length limitations because this motion contains 5,061 words, excluding the items exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f).

This motion complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(4)-(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Times New Roman font.

Dated: February 7, 2023

*/s/ Kathleen Hartnett*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **MOTION FOR STAY PENDING APPEAL** with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system on February 7, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  February 7, 2023

*/s/ Kathleen Hartnett*