No. 23-1078

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

B.P.J., by her next friend and mother, HEATHER JACKSON,

*Plaintiff-Appellant*,

V.

WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,

*Defendants-Appellees*,

AND

LAINEY ARMISTEAD,

*Intervenor-Appellee*.

On Appeal from the United States District Court
for the Southern District of West Virginia
Hon. Joseph R. Goodwin
Case No. 2:21-cv-00316

**PLAINTIFF-APPELLANT B.P.J.'s REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

**RELIEF REQUESTED BY FEBRUARY 26, 2023**

*Counsel for Plaintiff-Appellant listed on the following page*

Tara Borelli
LAMBDA LEGAL
1 West Court Square, Suite. 105
Decatur, GA 30030
Phone: (424) 298-7911
tborelli@lambdalegal.org

Sruti Swaminathan
LAMBDA LEGAL
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
sswaminathan@lambdalegal.org

Kathleen Hartnett
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com

Joshua Block
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org

*Counsel for Plaintiff-Appellant B.P.J.*

# TABLE OF CONTENTS

                                 Page

INTRODUCTION ......................................................................................................1

ARGUMENT .............................................................................................................2

 I.  DEFENDANTS ARGUE THE WRONG LEGAL STANDARD. ................2

 II.  B.P.J. IS LIKELY TO SUCCEED ON THE MERITS, AND, AT MINIMUM, PRESENTS A SUBSTANTIAL MERITS CASE. ...................3

 III.  THE EQUITIES OVERWHELMINGLY FAVOR A STAY. .......................9

CONCLUSION ........................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adams v. Sch. Bd. of St. Johns Cty.*,
    57 F.4th 791 (11th Cir. 2022) ...................................................................1, 4

*Andino v. Middleton*,
    141 S. Ct. 9 (2020) ........................................................................................3

*Clark v. Arizona Interscholastic Ass'n*,
    695 F.2d 1126 (9th Cir. 1982) .......................................................................5

*Gregor v. W. Va. Secondary Sch. Activities Comm'n*,
    2020 WL 5997057 (S.D.W. Va. Oct. 9, 2020) .............................................9

*Grimm v. Gloucester Cnty. School Board*,
    972 F.3d 586 (4th Cir. 2020) ................................................................passim

*Hecox v. Little*,
    479 F. Supp. 3d 930 (D. Idaho 2020) ............................................................5

*Hilton v. Braunskill*,
    481 U.S. 770 (1987) ......................................................................................2

*Miller v. Johnson*,
    515 U.S. 900 (1995) ......................................................................................7

*Neese v. Beccera*,
    2022 WL 1265925 (N.D. Tex. Apr. 26, 2022) .............................................1

*Nken v. Holder*,
    556 U.S. 418 (2009) ..................................................................................2, 3

*Payne v. Taslimi*,
    998 F.3d 648 (4th Cir. 2021) .........................................................................5

*Pers. Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979) ......................................................................................4

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) ..........................................................................................3

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Revel AC, Inc.*,
  802 F.3d 558 (3d Cir. 2015) ...................................................................................2

*Sessions v. Morales-Santana*,
  137 S. Ct. 1678 (2017) ............................................................................................8

*Tineo v. Att'y Gen. United States of Am.*,
  937 F.3d 200 (3d Cir. 2019) ...................................................................................8

*Tuan Anh Nguyen v. INS.*,
  533 U.S. 53 (2001) ............................................................................................7, 8

*United States v. Virginia*,
  518 U.S. 515 (1996) ................................................................................................6

*Wise v. Circosta*,
  978 F.3d 93 (4th Cir. 2020) ....................................................................................3

## INTRODUCTION

Plaintiff-Appellant B.P.J.'s motion for a stay pending appeal of the district court's dissolution order (Dkt. 34-1 ("Mot.")) should be granted. B.P.J. has not only presented a "substantial case on the merits" of her appeal, which is all that is required here, but has also established a likelihood of success. (Mot. 13-20.) The district court's order misapplies heightened scrutiny and conflicts with this Court's binding precedent in *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020). Defendants' briefing (Dkt. 46 ("County Opp."), Dkt. 48-1 ("Opp.")), which relies heavily on out-of-circuit cases that reject *Grimm*'s holding,[1] confirms that their real disagreement is not with B.P.J.'s arguments, but with *Grimm* itself.

As the district court recognized, the equities "weigh heavily in favor of" a stay to preserve the status quo. (A-338.) Defendants' arguments to the contrary are based on "sheer conjecture and abstraction" disconnected from this case. *Grimm*, 972 F.3d at 614 (cleaned up). Absent a stay, B.P.J. cannot participate on girls' teams at her school, as she has—without incident—for the year-and-a-half under the injunction. (Mot. at 2.) Despite their rhetoric, Defendants have not identified a single person who has been "forgotten, erased, or dismissed" (Opp. 20) by B.P.J.'s participation. In contrast, it is B.P.J. whom Defendants seek to erase by referring to her exclusively

---

[1] *See* Opp. 8-18 (citing *Adams v. Sch. Bd. of St. Johns Cty.*, 57 F.4th 791 (11th Cir. 2022) (en banc); *Neese v. Becerra*, 2022 WL 1265925 (N.D. Tex. Apr. 26, 2022)).

1

as "male" and feigning that she can simply join the boys' team. (Opp. 21.)[2] In short, "the only person truly injured by the enforcement of the Act against her is B.P.J., who must now watch her teams compete from the sidelines." (A-338.)

## ARGUMENT

### I. Defendants Argue The Wrong Legal Standard.

A stay pending appeal should be granted where a party shows "that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits" if the other "factors in the traditional stay analysis militate" in its favor. *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987). Because the equities "weigh heavily in favor of" a stay (A-338), the "substantial case on the merits" standard applies.[3]

Defendants mischaracterize B.P.J.'s motion as seeking an injunction. (Opp. 6.) But B.P.J. is not seeking a brand-new injunction; she is seeking a stay of the district court's dissolution order, which dissolved the injunction that had been in place for a year-and-a-half. It is ***the dissolution order*** that altered the status quo and

---

[2] Unlike the other Defendants' brief, the County's brief recognizes that B.P.J. is a girl who is transgender and addresses her using female pronouns.

[3] The *Hilton* standard has not been overruled by *Nken v. Holder*, 556 U.S. 418 (2009). (*Contra* County Opp. 3-4.) Under *Nken*, "[m]ore than a mere 'possibility' of relief is required," 556 U.S. at 434, and a "substantial case" is more than a "mere possibility," *see Hilton*, 481 U.S. at 778. Nor does it matter that *Hilton* arose in the habeas context (County Opp. 5-6); courts regularly apply *Hilton* to stays generally. *See, e.g., In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015).

2

a stay would merely "hold that ruling in abeyance to allow an appellate court the time necessary to review it." *Nken*, 556 U.S. at 421.[4]

In any event, as B.P.J. has argued (Dkt. 34-1), and as discussed below, B.P.J.'s motion should be granted under either the stay or preliminary injunction standard.

## II. B.P.J. Is Likely To Succeed On The Merits, And, At Minimum, Presents A Substantial Merits Case.

B.P.J. has detailed why she is likely to succeed on the merits of her Title IX and equal protection claims, and, at a minimum, presents a substantial merits case. (Mot. 15-20.) Defendants' opposition confirms that their disagreement is not with this argument, but with *Grimm* itself.

For instance, Defendants posit that the classification at issue is the creation of separate sports teams for boys and girls. (Opp. 8-9.) It is not. School sports *already* were sex-separated in West Virginia before H.B. 3293. (A-108.) H.B. 3293 *redefined* sex-separation with a new classification to target transgender students—and only transgender students—for exclusion. Like the policy in *Grimm*, H.B. 3293 explicitly references "gender identity" in its legislative findings and creates a definition of "biological sex" that, by design and effect, targets B.P.J. as a girl who

---

[4] Defendants cite to *Wise v. Circosta*, 978 F.3d 93, 98 (4th Cir. 2020), and *Andino v. Middleton*, 141 S. Ct. 9, 10 (2020) (Kavanaugh, J., concurring), but those cases discussed the "status quo" in the unique context of invoking *Purcell v. Gonzalez*, 549 U.S. 1 (2006), in election disputes—not to distinguish between stays and injunctions.

3

is transgender and categorically excludes her from participating consistent with her gender identity. It is *that* categorical transgender exclusion—not sex separation in sports—that B.P.J. challenges. And it is that exclusion—not the differential treatment of cisgender girls compared to cisgender boys—that must pass muster under Title IX and equal protection scrutiny.[5]

In arguing that H.B. 3293 has merely a "disparate impact" on transgender students (Opp. 8-9), Defendants rely on the Eleventh Circuit's *Adams* decision—which rejected *Grimm*. Unlike the Eleventh Circuit, this Court recognized that Grimm was similarly situated to other boys and was challenging a discriminatory policy adopted for the purpose of targeting transgender students. *See Grimm*, 972 F.3d at 609-10. And unlike a cisgender girl excluded from the boys' restroom, "Grimm was treated worse than students with whom he was similarly situated because he alone could not use the restroom corresponding with his gender." *Id.* at

---

[5] Even if H.B. 3293 were facially neutral regarding transgender students—it is not—there is no doubt that H.B. 3293 was passed "'because of,' not 'in spite of,' its adverse effects upon" girls who are transgender. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); (*contra* Opp. 9). The legislative history makes that clear. (A-111-12; A-283 ("H.B. 3293 aimed to politicize participation in school athletics for transgender students.").)

4

618. *Grimm* further recognized that excluding Grimm from the boys' restroom imposed "stigma" and inflicted "emotional and dignitary harm." *Id.* at 617-18.[6]

*Grimm*'s holding and reasoning controls here. *See Payne v. Taslimi*, 998 F.3d 648, 654-55 (4th Cir. 2021) (explaining that "when a panel of our Court looks horizontally to our own precedents, we must apply their commands as a mechanical mandate," and "a precedent's reasoning must be followed" if "necessary to the [case] outcome"). Per *Grimm*, the permissibility of separating teams on a male/female basis does not answer the question presented: whether a statute may categorically exclude B.P.J. from all sex-separated sports because of the incongruence between her gender identity and sex assigned at birth, relegating her to "watch her teams compete from the sidelines." (A-338.) And, as in *Grimm*, isolating B.P.J. from her peers by preventing her from participating in a manner consistent with her gender identity discriminates against her in violation of the Equal Protection Clause and Title IX.[7]

---

[6] Nor is B.P.J. similarly situated to hypothetical boys with low testosterone. (Opp. 12.) As the United States explained, a "claim by a cisgender boy to play on a girls' team" would fail because this hypothetical boy "lives and presents as a boy and therefore is not similarly situated to girls for purposes of permissibly sex-segregated activities" and "experiences no cognizable 'emotional and dignitary harm'" from exclusion. (A-015.)

[7] Defendants rely on *Clark v. Arizona Interscholastic Association*, 695 F.2d 1126 (9th Cir. 1982), which upheld a policy prohibiting cisgender boys from playing on a girls' volleyball team where "boys' overall opportunity is not inferior to girls," 695

5

Defendants continue to mischaracterize B.P.J. as supposedly demanding that sports be separated based on gender identity. (Opp. 13.) That is not B.P.J.'s claim. This case is not about whether all girls who are transgender must be categorically *included* in girls' sports teams. Rather, this case is an as-applied challenge to a law that categorically *excludes* transgender girls from all school sports, at all levels of competition, based solely on sex assigned at birth and regardless of whether they have any characteristics associated with typical male puberty. Under heightened scrutiny, "[t]he burden of justification [for that exclusion] is demanding and [] rests entirely on the State"—*not* B.P.J. *United States v. Virginia*, 518 U.S. 515, 533 (1996).

As applied to B.P.J., West Virginia's categorical exclusion cannot be justified—as Defendants seek to do—by average physiological differences between cisgender males and cisgender females. Once again, *Grimm* controls the analysis. In analyzing Grimm's as-applied challenge, this Court asked whether the challenged policy was "substantially related to the important objective of protecting student privacy" "*as applied to Grimm*." *Grimm*, 972 F.3d at 607 (emphasis added). This Court then concluded that "bodily privacy of cisgender boys using the boys

---

F.2d at 1131, and where "substantial displacement" of girls would occur were boys permitted to play, *see Hecox v. Little*, 479 F. Supp. 3d 930, 978 n.34 (D. Idaho 2020). By contrast, H.B. 3293 categorically excludes girls who are transgender from sports without providing equal opportunities, and allowing girls who are transgender to play would not substantially displace girls. *See id.* at 977.

restrooms did not increase when Grimm was banned from those restrooms. Therefore, the Board's policy was not substantially related to its purported goal." *Id.* at 614. Likewise, here, the record demonstrates that barring B.P.J. from participating would not advance any asserted interest in protecting cisgender girls. H.B. 3293 thus fails intermediate scrutiny in this as-applied challenge.

Tellingly, although Defendants assert that as-applied challenges under "intermediate scrutiny" cannot consider individual circumstances, they cite no equal protection case for that proposition. *Cf. Grimm*, 972 F.3d at 606. Defendants instead rely on cases applying "intermediate scrutiny" in the inapposite context of the Second Amendment and content-neutral regulations of speech. (County Opp. 12-13; Opp. 10.) Unlike the "reasonable fit" standard in those contexts, under equal protection intermediate scrutiny, "[t]he fit between the means and the important end" must be "exceedingly persuasive," not merely reasonable. *Tuan Anh Nguyen v. INS.*, 533 U.S. 53, 70 (2001). And group-based generalizations may not be used to "deny[] opportunit[ies]" to people "outside the average description." *Virginia*, 518 U.S. at 550. "At the heart of the Constitution's guarantee of equal protection lies the simple command that the Government must treat citizens *as individuals*, not as simply

7

components of a racial, religious, sexual or national class." *Miller v. Johnson*, 515 U.S. 900, 911 (1995) (cleaned up) (emphasis added).[8]

Finally, with respect to B.P.J.'s Title IX claim, Defendants assert that Title IX does not require "sex-blindness" and allows educational institutions "to consider sex in some circumstances." (Opp. 16.) But as *Grimm* made clear, sex *separation* under Title IX is distinct from sex *discrimination*. Title IX regulations provide that "the act of creating sex-separated [teams] in and of itself is not discriminatory—not that, in applying [athletic] policies to students like [B.P.J.], the [West Virginia legislature] may rely on its own discriminatory notions of what 'sex' means" to exclude transgender students. *Grimm*, 972 F.3d at 618; (*see* A-004-025).

B.P.J.'s likelihood of success must be assessed under *Grimm* and other controlling precedent. Under that precedent, B.P.J. is likely to succeed on the merits, and, at minimum, presents a substantial merits case.

---

[8] Defendants cite *Nguyen* to argue that equal protection intermediate scrutiny does not require classifications to be "capable of achieving its ultimate objective in every instance." (Opp. 13.) But *Nguyen* emphasized that the challenged statute was "not marked by misconception and prejudice," and that the father's burden of acknowledging parenthood was "minimal" and met without "inordinate and unnecessary hurdles." *Id.* at 73; *see Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1694 (2017) (distinguishing *Nguyen* where burden not "minimal"); *Tineo v. Att'y Gen. United States of Am.*, 937 F.3d 200, 214 (3d Cir. 2019) (distinguishing *Nguyen* and granting as-applied challenge where impossible for father to transmit citizenship to child); *Grimm*, 972 F.3d at 615 (distinguishing *Nguyen* where policy marked by "misconception and prejudice"). *Nguyen* does not support a categorical ban inflicting stigma and harm.

### III. The Equities Overwhelmingly Favor a Stay.

As the district court recognized, the remaining stay factors "weigh heavily in favor" of a stay. (A-338.) If a stay is not granted, B.P.J. would be isolated from her peers and irreparably harmed during "a memorable and pivotal time in [her] life." (A-338.) Defendants' only retort is that B.P.J. would not be isolated playing on boys' teams because cisgender girls sometimes choose to compete on boys' teams. (Opp. 21.) Again, this seeks to erase the fact that forcing B.P.J. to play on boys' teams would itself irreparably harm B.P.J.—who is a girl. (A-310.) It also ignores that in West Virginia, cisgender girls are *prohibited* from playing on boys' teams if a girls' team is available. *Gregor v. W. Va. Secondary Sch. Activities Comm'n*, 2020 WL 5997057, at *3 (S.D.W. Va. Oct. 9, 2020).

B.P.J.'s continued participation on girls' middle-school sports teams also will harm no one. As the district court noted, B.P.J. consistently places "near the back of the pack" (A-290), and "not one child has been or is likely to be harmed by B.P.J.'s continued participation," (A-338). There simply are no "scores" of West Virginia girls whose harm has been "forgotten, erased, or dismissed." (Opp. 2.) Defendants thus resort to quoting an Idaho college student describing her feelings about placing behind a transgender woman in three NCAA races. (Opp. 21.) But this as-applied challenge is about a child who simply wants to play on her middle-

9

school teams with her friends.[9]

Defendants' additional speculation about hypothetical inequities from allowing the as-applied injunction to remain in place (Opp. 22; County Opp. 19-20) is nothing more than "sheer conjecture and abstraction." *Grimm*, 972 F.3d at 614 (cleaned up). That injunction has been in place for over a year-and-a-half, without issue. Indeed, as far as the record shows, B.P.J. is still the only girl who is transgender seeking to play school sports in West Virginia. Thus, the only actual inequity at issue here is depriving B.P.J. the once-in-a-lifetime opportunity to play middle school sports as the girl she is. (A-338.)[10]

---

[9] Notably, Defendants' briefs are replete with assertions that mischaracterize the record, that cite to documents not in the record, or that cite to nothing at all. (*See* County Opp. 9, 13, 16-20; Opp. 3, 13, 18-19, 21.) The County, for example, makes representations regarding school tryouts without any factual support. (County Opp. 18.) Similarly, Defendants mischaracterize the district court's summary judgment order (*see, e.g.*, Opp. 3), assert that B.P.J. made "concessions" without citations to said "concessions" (*id.* at 18-19), and reference documents not raised below (*id.* at 21).

[10] There is no risk, as Defendants crassly put it, of puberty "catapult[ing]" B.P.J. "from zero to hero," (Opp. 21; County Opp. 14 n.3), because B.P.J. will be going through a typically female puberty. Should some unexpected circumstance arise, Defendants could always seek to modify the injunction.

10

Finally, the district court properly recognized that a stay would be in the public interest because "[i]t is in the public interests that all children who seek to participate in athletics have a genuine opportunity to do so." (A-338.) Indeed, protecting politically unpopular groups from legislators' unfounded fears are some of "[t]he proudest moments of the federal judiciary." *Grimm*, 972 F.3d at 620.

## CONCLUSION

B.P.J. respectfully requests that this Court issue a stay pending appeal of the district court's dissolution order on or before February 26, 2023.

Dated: February 17, 2023

By: *Kathleen Hartnett*

Attorney for Plaintiff-Appellant B.P.J.

11

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 27(d)(2)(A) and 32(g), I certify that this reply complies with applicable type-volume and length limitations because this motion contains 2,583 words, excluding the items exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f).

This reply complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(4)-(6) because this reply has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Times New Roman font.

Dated: February 17, 2023

*/s/ Kathleen Hartnett*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL** with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system on February 17, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: February 17, 2023

*/s/ Kathleen Hartnett*